746 So.2d 825 (1999)
STATE of Louisiana
v.
Nolan J. POWELL.
No. 98-KA-0278.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
*826 Harry F. Connick, District Attorney of Orleans Parish, John Jerry Glas, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
John H. Thomas, Arnold, Thomas & Gillio, LLP, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER, Judge ROBERT A. KATZ.
*827 KATZ, Judge.

STATEMENT OF THE CASE
On November 6, 1996, appellant Nolan J. Powell was charged by bill of information with possession of stolen property valued at five hundred dollars or more. Following a jury trial on January 23, 1997, the appellant was found guilty as charged. On February 21, 1997, the court denied defense motions for post verdict judgment of acquittal and for new trial. On February 28, 1997, Powell was found to be a triple offender and sentenced to serve six years and eight months under the Habitual Offender Law.
It is from this conviction and sentence that the defendant now appeals.

STATEMENT OF THE FACTS
On September 28, 1996, John Taylor, a salesman for Benson Toyota in Jefferson Parish, left the dealership premises with a new Toyota Tacoma pick-up truck valued at over sixteen thousand dollars, purportedly to take it to a customer's house to complete a sale. About three hours later, the customer called to report that the salesman had not shown up with the vehicle. The personnel at the dealership were first concerned for the safety of their salesman. After waiting a while longer, they called 911 and reported to the Jefferson Parish Sheriff's Office that Taylor and the vehicle were missing.
The following day, Lyndon Lasiter, sales manager for the dealership, received a call from the Sheriff's Office advising him that John Taylor had an extensive prior arrest record, and had probably left the dealership with the intent to steal the vehicle. The report was subsequently changed from a missing person to a stolen vehicle.
On October 16, 1996, at about 11:00 a.m., Officers Garold Fayard and Jerome Dupre were on patrol in uniform and in a marked vehicle traveling behind a truck at the intersection of Dale and Drew Streets in New Orleans. The driver of the truck pulled the truck over and parked it at an angle which obstructed traffic in one direction of a two-way street. When the driver, identified as the defendant Nolan Powell, exited the vehicle, the officers stopped him to cite him for obstruction of traffic.
The officers requested Powell's driver's license, proof of ownership, proof of registration and proof of insurance. The defendant had none of these items. The officers noted that the vehicle had no license plate and no temporary tag. Officer Fayard obtained the vehicle identification number from the dashboard and ran it through the National Crime Intelligence Computer (NCIC). A few moments later he was advised that the vehicle had been reported stolen on September 28, 1996. Powell was then arrested for theft of the vehicle and was advised of his Miranda rights.
The defendant and the subject vehicle were taken to the district station. While driving the vehicle to the station, Officer Fayard noticed a receipt showing that a locksmith had been to 4659 Ray Street on October 4, 1996 to make an ignition key for a truck. The owner of Champion Lock Company produced the company's copy of the invoice and verified that an employee of his company had gone to the address shown and had made an ignition key at the request of the defendant.
After being advised of his arrest, the defendant stated to Officer Fayard that he purchased the vehicle from John Taylor.
The defendant's sister, Karlas Powell, testified that her brother was a musician in the evening, but did mechanical and detail work on cars during the day. She testified that she lived at 4657 Ray Avenue in the other side of a double from the defendant, and knew that the truck had been at his house for awhile. She further testified that the defendant told her that he had done some work on the truck for John Taylor, but that Taylor never came back to pick it up. She testified that the defendant had keys made by a locksmith because he lost the keys given to him by John Taylor.

*828 ERRORS PATENT

A review of the record for errors patent indicates that there were none.

ASSIGNMENT ONE
The appellant argues that the evidence was insufficient to support the jury's conclusion that the defendant knew or had reason to know that he was in possession of a stolen vehicle. The standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Although the steering column was not broken, nor the VIN scratched out, there was ample evidence for a jury to conclude that the defendant knew or should have known that the vehicle was stolen. First, there were contradictory statements by the defendant and his sister over how the defendant came to be in possession of the vehicle. The defendant stated to Officer Fayard that he purchased the vehicle from John Taylor, but could produce no bill of sale. The defendant's sister testified that the defendant worked on the vehicle for John Taylor. She further testified that the defendant knew the vehicle belonged to Benson Toyota, yet when Taylor never came to pick it up, the defendant did not call the dealership. Further, the defendant had an independent locksmith make an ignition key rather than obtain a key from the dealer. Last and most important, the vehicle had no license, temporary or otherwise, and the defendant could produce no registration papers or bill of sale.
If, as contended by the defense, the defendant only possessed the vehicle to work on it, it would seem logical that he would have called the dealer to find out why the vehicle had not been picked up so that he could be paid for his work. From the evidence, a factfinder could conclude beyond a reasonable doubt that the defendant knew or should have known that the vehicle was stolen. This assignment is without merit.

ASSIGNMENT TWO
The appellant argues that the trial court erred in denying the motion to suppress the evidence. He refers to the receipt found in the vehicle by Officer Fayard after the defendant was arrested, while Officer Fayard was transporting the vehicle to the district station. People have the right to be secure "in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; LA. CONST. art. I, § 5. As noted by the State, the defendant had no Fourth Amendment expectation of privacy in a vehicle which did not belong to him. However, assuming the defendant had such a right, the discovery of the locksmith receipt fits recognized exceptions to the warrant requirement.
Objects falling in plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968). Such evidence is not the product of a search, and therefore its introduction into evidence does not offend the Fourth Amendment to the United States Constitution or Article 1, § 5 of the Louisiana Constitution of 1974. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Bourg, 332 So.2d 235 (La.1976).
An inventory search at booking is another recognized exception to the warrant requirement. State v. Wilson, 467 So.2d 503, 517 (La.1985), cert. den., 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). In State v. Knapper, 626 So.2d 395, 396 (La.App. 4 Cir.1993), writ den., 93-2950 (La.1/28/94), 630 So.2d 798, this court quoted from Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984), in which the United *829 States Supreme Court adopted the "inevitable discovery" doctrine. The court in Nix held that "[E]vidence found as a result of a violation of a defendant's constitutional rights," would be admissible "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered."
The "inevitable discovery doctrine" is another exception that has been followed by Louisiana courts. The United States Supreme Court has held that unconstitutionally obtained evidence may be admitted at trial if it would inevitably have been seized by the police in a constitutional manner. State v. Nelson, 459 So.2d 510 (La.1984), cert. den., Nelson v. Louisiana, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Clark, 499 So.2d 332 (La.App. 4 Cir.1986).
Officer Fayard testified at trial that he noticed the receipt on the seat when he was driving the vehicle to the district station. It was thus in "plain view" and subject to seizure. However, had Officer Fayard not noticed the receipt, it would have inevitably been found during the subsequent inventory search of the vehicle. It was thus also properly admitted under the "inevitable discovery doctrine." This assignment is without merit.

ASSIGNMENT THREE
The appellant argues that the trial court erred by admitting into evidence, over defense objections, State's exhibit S-5, which reflected the defendant's unadjudicated traffic citations. The appellant argues that evidence of the defendant's prior bad acts, even criminal convictions, cannot be introduced unless the defendant takes the witness stand. The appellant further argues that evidence of unadjudicated offenses is particularly unreliable and should not be introduced under any circumstances.
La.C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. (Emphasis added).
The final phrase replaces the term "res gestae" as provided for in former La.R.S. 15:447-448. Evidence of other crimes is admissible when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Parker, 96-1852 (La.App. 4 Cir. 6/18/97), 696 So.2d 599, writ denied, 97-1953 (La.1/9/98), 705 So.2d 1097; State v. Brewington, 601 So.2d 656 (La.1992).
Res gestae events constituting other crimes evidence are deemed admissible because they are so nearly connected to the charged offense that the prosecution could not accurately present its case without reference to them. State v. Williams, 94-0622 (La.App. 4 Cir. 8/23/95) 660 So.2d 919; State v. Haarala, 398 So.2d 1093, 1097 (La.1981). A close connexity in time and location is required between the charged offense and the other crimes evidence. Haarala, supra. Often, evidence of other crimes that is relayed by a police officer's narrative of the events that led up to the arrest is admitted as res gestae. State v. Granier, 592 So.2d 883, 886 (La. App. 4 Cir.1991), writ denied 600 So.2d 1334 (La.1992).
In the case sub judice, Officer Fayard testified that he cited the defendant for the following violations: no proof of insurance, *830 no registration, no driver's license and impeding the flow of traffic. The officer initially noticed the defendant when the defendant parked the truck at such an angle so as to impede traffic. The defendant's inability to provide insurance, registration and a driver's license necessitated the officer's call to the police station to check with NCIC to determine the status of the vehicle. The officer subsequently learned that the truck had been reported stolen.
It is clear that the citations issued to the defendant are directly related to the charged offense and are an inseparable part of the whole event. The violations to which the officer testified and the citations which comprised the State's exhibit were not alleged prior bad acts, but rather were part of the transaction of the instant offense, and were introduced by the State to indicate the reason the appellant was stopped.
This assignment is without merit.

ASSIGNMENTS FOUR AND SEVEN
The appellant argues that his sentence of six years and eight months is excessive because he was erroneously adjudicated a triple offender. Assuming the correctness of the multiple bill adjudication, six years and eight months is the minimum sentence for a triple offender for the appellant's offense. The appellant makes no Dorthey argument that his sentence should have been less than the mandatory minimum.[1]
The defendant argues that the State failed to prove the voluntariness of his prior pleas with Boykin transcripts.[2]
Requiring the State to meet its burden of proof in an habitual offender hearing only through the use of a "perfect" transcript of the guilty plea colloquy, however, has never been specifically required by this court. State v. Shelton, 621 So.2d 769 (La.1993). The court in Shelton stated that it has found "a variety of modes of proof, other than only a `perfect' transcript, to be sufficient to meet the State's burden of proof in an habitual offender hearing." Shelton, supra, at 776. The dominant thread running through the cases appears only to require that the court must determine from the entire record that the defendant was informed of and specifically waived his three Boykin rights. We have allowed a guilty plea form to supplement an "imperfect" transcript of the colloquy, i.e. one which reveals the judge and the defendant discussed a waiver of only some of the Boykin rights. Shelton, supra. The Louisiana Supreme Court in Shelton has modified the method of allocating burdens of proof in habitual offender proceedings to offer some relief to the prosecution. This revised method gives a presumption of regularity to predicated convictions used in habitual offender hearings. The court in State v. Morris, 94-0553 (La.App. 4 Cir. 11/17/94), 645 So.2d 1295 discussed in detail the Shelton tri-partite analysis:
(1)"If the defendant denies the allegations of the bill of information, the burden in on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken." This determination is made from the entire record.
(2) "If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea."
(3) If the defendant is successful under the second prong, the burden shifts back to the State to prove the constitutionality of the plea. The State may meet its burden in two ways:
(A) The State may present a "perfect" transcript which "reflects a colloquy between judge and defendant *831 wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers."
(B) "If the State introduces anything less than a perfect transcript, for example, a guilty plea form, a minute entry, an `imperfect' transcript, or any combination thereof, the judge must then weight the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights."
Further, the court in State v. Yarbrough, 596 So.2d 311 (La.App. 3 Cir. 1992), writ denied, 599 So.2d 317 (La.1992) found that the defendant's prior conviction for simple burglary was adequately proved through presentation of the bill of information, guilty plea form, certified trial court minutes, fingerprint record, and testimony of fingerprint expert.
In the case sub judice, the State proved by fingerprints, bills of information and minute entries, that the defendant was the person previously convicted. In addition, the State proved voluntariness of the predicate pleas with waiver of rights forms which were found sufficient by the trial court. As per the amended statute, the "presumption of regularity of judgment" is sufficient to meet the State's original burden of proof.
The defendant was called to testify by defense counsel. On questioning by defense counsel and by the prosecutor, the defendant testified that he did not know how much time he would get for the offense if he did not plead, and that he was scared. In response to questioning by defense counsel, the defendant admitted that he committed the offense. In questioning by the court, the defendant admitted that he signed and initialed the waiver of rights form. The defendant's testimony proved only that he pled to an agreed upon sentence rather than risk exposure to a much longer sentence. This does not indicate that the plea was involuntary. There was thus no error in the court's finding that the defendant voluntarily pled to the predicate offenses.

ASSIGNMENT FIVE
The appellant argues that the trial court erred by refusing to give the jury a requested and correct jury charge. According to appellant, he requested a special jury charge on the issue of specific intent, but the request was denied based on the court's finding that receiving stolen property is a crime requiring general intent only.
La.C.Cr.P. art. 807, in pertinent part, provides that a requested special charge "shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent." In the absence of qualifying provisions, the terms "intent" and "intentional" have reference to "general criminal intent." La. R.S. 14:11. The appellant was charged with and convicted of the illegal possession of stolen things, which is defined in La. R.S. 14:69(A) as the "intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses." The word "intentional" is not qualified in this statute. Accordingly, the court correctly determined that the illegal possession of stolen property is a general intent crime, and a jury charge on specific intent was not pertinent to the case.

ASSIGNMENT SIX
The appellant argues that the trial court erred in denying his pre-trial motion for continuance due to the unavailability of a key witness. A trial court's decision to deny or grant a continuance is within its broad discretion and will not be disturbed absent a clear showing of abuse. *832 State v. Simpson, 403 So.2d 1214 (La. 1981); State v. Holmes, 590 So.2d 834 (La. App. 4 Cir.1991). The decision turns on the circumstances of each case and should not be disturbed absent a showing of specific prejudice. State v. Cockerham, 95-0172 (La.App. 4 Cir. 3/14/96), 671 So.2d 967, writ den., 96-1257 (La.10/25/96), 681 So.2d 363; State v. Holmes, supra.
The appellant here avers that witness Kevin Johnson was properly subpoenaed, but was arrested on the morning of trial. The record fails to include any indication that the witness was subpoenaed. However, the transcript indicates that defense counsel orally requested a continuance because the defense witness had been arrested that morning. On the record, when the court called the appellant's case, the State responded that it was ready for trial. The defense then asked for a continuance. The court responded: "We'll make every effort to get him here. I was not informed of this when I called the case earlier that you would be asking for a continuance. You all informed me that every one was ready for trial. I'm going to deny the motion to continue this matter." It cannot be determined from this record whether the defense ever stated that it was ready for trial at a calling of the case prior to the transcribed colloquy. In any event, if there is no specific prejudice, the case should not be reversed.
The appellant argues that Johnson would have testified that the defendant had previously done automotive repairs and "auto detailing" for John Taylor. He would have further testified that Taylor returned to the defendant's house to pick up the truck on October 4, 1996, but because the defendant did not want to admit that he lost the keys and possibly lose future business, the defendant told Taylor that the truck was not ready, that it needed a fuse. The State correctly notes that the Karlas Powell testified similarly on these issues. Johnson's testimony would thus have been cumulative. However, because Karlas Powell is the defendant's sister, the jury would likely have considered her testimony less credible than the testimony of an unrelated witness. Nevertheless, considering Officer Fayard's testimony that the defendant stated that he purchased the vehicle from Taylor, and further considering that the defendant had no registration, ownership or insurance papers for the vehicle, and further considering that the defendant failed to contact the dealership when Taylor never came back for the vehicle, there is no reasonable probability that the testimony of Kevin Johnson would have affected the verdict. Accordingly, because there was no specific prejudice, the court's decision to deny the motion for continuance should not be disturbed on appeal.
Accordingly, appellant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] State v. Dorthey, 623 So.2d 1276 (La.1993).
[2] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).