CLARENCE E. McMANUS, Judge.
 

 | ¡¿Defendant appeals his conviction of possession with intent to distribute cocaine. For the reasons which follow, we affirm defendant’s conviction and sentence.
 

 STATEMENT OF THE CASE
 

 On August 23, 2006, the Jefferson Parish District Attorney filed a bill of information charging defendant, Brian K. Massey, with possession with intent to distribute cocaine in violation of LSA-R.S. 40:967 A. Defendant was arraigned on October 25, 2006, and pled not guilty. On May 4, 2010, defendant’s Motion to Suppress evidence and the State’s Notice of Intent to introduce 404(B) evidence were denied. On that same day, the case was tried before a 12-person jury which found defendant guilty as charged. Also on May 4, 2010, the trial court found defendant guilty of possession of drug paraphernalia and possession of marijuana in a separate district court case.
 

 On May 13, 2010, the trial judge sentenced defendant, to imprisonment at hard labor for 30 years to run consecutively to any other sentence he was currently serving. The trial court also sentenced defendant to six months for the possession |sof marijuana and drug paraphernalia charges, to run concurrently with any oth
 
 *370
 
 er sentence he was currently serving. Also on May 13, 2010, the State filed a multiple bill alleging defendant to be a third felony offender and defendant denied those allegations.
 

 On June 4, 2010, the trial judge found defendant to be a third felony offender. The trial judge subsequently vacated the original sentence and resentenced defendant under the multiple bill statute to imprisonment at hard labor for 40 years “consecutive in the department of corrections.”
 

 FACTS
 

 The following facts were elicited at trial. On August 9, 2006, at approximately 4:35 a.m., Sergeant Donald Galliano and Officer Dustin Ward of the City of Westwego Police Department were in separate marked vehicles on the Westbank Expressway looking for traffic violations when they observed a black Lincoln with very dark tinted windows traveling eastbound. Sergeant Galliano and Officer Ward decided to conduct a traffic stop. Officer Ward was in the lead car, and Sergeant Galliano was in the rear car. After the vehicle eventually came to a stop, Officer Ward, using his PA system, asked the driver several times to exit the vehicle, but he did not do so.
 

 Sergeant Galliano and Officer Ward then exited their units and gave several loud verbal commands telling the driver to step out. After those additional requests, the driver still did not exit his vehicle. Therefore, Officer Ward went toward the driver’s side and Sergeant Galliano went toward the passenger side of the vehicle. Sergeant Galliano shined his flashlight into the window, but he could not see anything because of the dark tinted windows. He proceeded to the front of the vehicle and shined his flashlight through the front windshield. When he did so, he saw defendant “fooling with the center console like he was reassembling it.”
 

 |4The driver then opened the driver’s side door and stepped out of the vehicle. At that time, Officer Ward smelled burned marijuana. Defendant became very nervous and started looking around from side to side and shuffling his feet. Based on his experience, Sergeant Galliano believed that those were signs that defendant was about to run. Therefore, Officer Ward applied “wrist lock” and put defendant on the side of the vehicle.
 

 Sergeant Galliano and Officer Ward requested defendant’s driver’s license, vehicle registration, and proof of insurance. When they requested the driver’s license, defendant replied that his license was possibly suspended and that he had outstanding attachments. Sergeant Galliano conducted a National Computer Information Check (NCIC) and learned that defendant was correct in that his driver’s license was suspended, and he had outstanding attachments. Defendant was arrested and advised of his rights. Officer Ward conducted a pat down search of defendant for weapons, but did not find anything.
 

 Sergeant Galliano walked to the driver’s side of the vehicle and also smelled burned marijuana. He looked inside the opened driver’s side door and saw particles of green leafy matter on the driver’s seat consistent with marijuana. After making that observation, Sergeant Galliano searched the vehicle. When he did so, he saw particles that he believed to be marijuana on the front seat and a digital scale on the driver’s seat on the right hand side. Sergeant Galliano lifted up the center console and found three off-white rocks that he believed to be crack cocaine and a “bud” of green vegetable matter that he believed to be marijuana next to them. He also located $451.00 in cash inside the driver’s side door.
 

 
 *371
 
 Sergeant Galliano field tested the particles on the front seat and the green leafy vegetable matter on the scale, and they tested positive for marijuana. He also field tested the off-white rocks, and they tested positive for cocaine.
 

 | ¿After defendant was arrested, but before he was transported to the City of Westwego headquarters, Officer Ward checked the rear seat of his unit to make sure that there were no narcotics or weapons inside the vehicle pursuant to police department policy. When Officer Ward did not find anything, defendant was placed in the back seat of Officer Ward’s unit and transported to the City of West-wego headquarters. While en route, defendant’s hands were behind his back, and defendant was “moving a lot,” which started to concern Officer Ward. When they arrived, Officer Ward conducted a more thorough search of defendant’s person, after which he found in defendant’s sock a clear bag of green vegetable matter that field tested positive for marijuana.
 

 Once defendant was removed from the unit, Officer Ward located a clear plastic bag stuffed in the seat right behind where defendant had previously been sitting. Sergeant Galliano testified that inside that bag were several other clear plastic bags filled with a white powdery substance. Officer Ward testified that that bag also contained an off-white rock substance. Additionally, when defendant exited the unit, he had white powder on the back of his pants, on the back of his belt, inside of his pants all the way to the buttock area, on his hands, and in his fingernails. All of these substances field tested “positive.” There was no residue on the seat prior to defendant getting into the unit.
 

 Testing was performed on the windows of defendant’s vehicle to determine whether they were legally tinted, and the reading was six percent. Sergeant Galliano explained that the front driver’s side and passenger side windows were allowed to be 40 percent or higher, and that the lower the number, the less you could see.
 

 After being qualified as an expert in the field of packaging, quantity, and distribution of narcotics, Detective Sergeant Shane Klein of the Jefferson Parish ^Sheriffs Office (JPSO) testified that the evidence showed that this was someone who was in possession with the intent to distribute, because there were no pipes, no syringes, and no other paraphernalia one would use to consume the drugs himself, and the only paraphernalia present was that associated with distribution, including the digital scale, the packaging material, the amount of cocaine, and the money.
 

 Charles Krone, an expert in the field of identification and classification of controlled dangerous substances, testified that State’s Exhibit 1 weighed 11.85 grams and tested positive for marijuana. He also testified that State’s Exhibit 2 was comprised of numerous torn pieces of plastic bags and loose white and off-white material that weighed 16.79 grams and tested positive for cocaine.
 

 Defendant now appeals alleging the following assignments of error. For the reasons which follow, we affirm his conviction of possession of marijuana with intent to distribute and affirm his sentence.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 Defendant argues that the trial judge erred by denying his motion for a mistrial based upon the introduction of inadmissible evidence of other crimes. He contends that his motion should have been granted when Sergeant Galliano testified that defendant’s vehicle was stopped because it had illegally tinted windows, and when Sergeant Galliano and Officer Ward indi
 
 *372
 
 cated that they were familiar with defendant from prior incidents. Defendant asserts that the reference to prior incidents was a direct reference to inadmissible pri- or criminal conduct that should have resulted in a mistrial. He further asserts that a mistrial was warranted because both officers volunteered the prior incidents’ reference in non-responsive answers to virtually identical questions. Defendant maintains that the prior incidents testimony was planned by the State with the officers so as to improperly influence the jury with inadmissible evidence.
 

 17With respect to the tinted windows’ testimony, the State responds that the trial court properly denied the motion for a mistrial and correctly ruled that the testimony was
 
 res gestae.
 
 With respect to the testimony regarding the officers’ familiarity with defendant from prior incidents, the State responds that an officer’s reference to familiarity with or observation of a defendant on previous occasions does not constitute a reference to another crime. The State also contends that the questions prompting the responses were directed to the sequence of events as they unfolded at the scene. Lastly, the State argues that the error, if any, was harmless as the verdict rendered was surely unattributable to the error.
 

 Under LSA-C.Cr.P. art. 775, “[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.” Regarding prejudicial remarks or comments, LSA-C.Cr.P. art. 770 provides:
 

 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
 

 [[Image here]]
 

 (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]
 

 [[Image here]]
 

 Article 770 does not generally apply to testimony by a State witness because witnesses are not considered “court officials.”
 
 State v. Thomas,
 
 08-113, p. 9 (La.App. 5 Cir. 6/19/08), 988 So.2d 750, 756. However, Article 770 may be triggered if an impermissible reference to other crimes is deliberately elicited by the prosecutor because such testimony is imputable to the State.
 
 Id.
 

 A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to 18defendant, depriving him of a reasonable expectation of a fair trial.
 
 State v. Smith,
 
 04-340, p. 5 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 285. Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion.
 
 Id.
 

 A trial judge is required to admonish the jury to disregard a comment made within the hearing of the jury that is irrelevant, immaterial or prejudicial to the defendant or the State when an admonishment is requested by the defendant or the State. LSA-C.Cr.P. art. 771;
 
 State v. Smothers,
 
 02-277, p. 15 (La.App. 5 Cir. 12/30/02), 836 So.2d 559, 569,
 
 writ denied,
 
 03-0447 (La.10/10/03), 855 So.2d 329. This article applies to remarks or comments made by a witness regardless of whether the remark or comment is within the scope of LSA-C.Cr.P. art. 770.
 
 Smothers,
 
 02-277 at 16, 836 So.2d at 569. The trial
 
 *373
 
 court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
 
 Id.
 

 Testimony Regarding Stop for Illegally Tinted Windows
 

 Sergeant Galliano testified at trial during direct examination that they stopped defendant’s vehicle because it had an illegal window tint. Defense counsel asked to approach the bench. He argued that defendant was not on trial for tinted window glass, and that this was evidence of another crime for which he was not on trial. Therefore, defense counsel moved for a mistrial. The prosecutor responded that this was clearly evidence of
 
 res gestae,
 
 that it was the basis for the stop, and that the jury was entitled to be advised of that. The trial judge ruled that the evidence in question was
 
 res gestae
 
 and denied the motion for mistrial.
 

 Generally, evidence of “other crimes,” or bad acts committed by a criminal defendant, is inadmissible at trial due to the risk of grave prejudice to the defendant. LSA-C.E. art. 404 B(1);
 
 State v. Prieur, 217
 
 So.2d 126, 128 (La.1973);
 
 State v. Williams,
 
 01-1007, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1026, 1030,
 
 writ denied,
 
 08-2070 (La.1/30/09), 999 So.2d 751. But evidence of “other crimes” may be introduced if it is independently relevant or when it relates to conduct — formerly referred to as
 
 res gestae
 
 — that “constitutes an integral part of the act or transaction that is the subject of the present proceeding.” LSA-C.E. art. 404 B(l).
 
 Res gestae
 
 events constituting “other crimes” are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them.
 
 State v. Taylor,
 
 01-1638, p. 10 (La.1/14/03), 838 So.2d 729, 741,
 
 cert. denied,
 
 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004).
 

 The
 
 res gestae
 
 doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime, if a continuous chain of events is evident under the circumstances.
 
 State v. Taylor,
 
 01-1638 at 10-11, 838 So.2d at 741. The
 
 res gestae
 
 doctrine is designed to allow the story of the crime to be told in its entirety, by proving its immediate context of happenings in time and place.
 
 Taylor,
 
 01-1638 at 11, 838 So.2d at 742.
 

 In
 
 State v. Powell,
 
 98-278 (La.App. 4 Cir. 11/17/99), 746 So.2d 825, defendant took a truck from an automobile dealership. An officer noticed defendant when he parked the truck at such an angle so as to impede traffic. The officer cited defendant for impeding the flow of traffic, no proof of insurance, no registration, and no driver’s license. Defendant was charged with and convicted of possession of stolen property valued at $500.00 or more. On appeal, defendant argued that the trial court erred by admitting into evidence an exhibit which reflected his unadjudicated traffic citations. The Fourth Circuit noted that | indefendant’s inability to provide insurance, registration, and a driver’s license necessitated the officer’s call to the police station to check with NCIC to determine the status of the vehicle, and that the officer subsequently learned that the truck had been reported stolen. The Fourth Circuit found it was clear that the citations issued to defendant were directly related to the charged offense and were an inseparable part of the whole event. It further found that the violations to which the officer testified and the citations which comprised the State’s exhibit were not alleged
 
 *374
 
 prior bad acts, but rather were part of the transaction of the instant offense, and were introduced by the State to indicate the reason the appellant was stopped.
 
 Id.,
 
 98-278 at 6-7, 746 So.2d at 829-30.
 

 In the instant case, the testimony regarding defendant being stopped due to illegally tinted windows was properly admitted as
 
 res gestae,
 
 because that event constituted an integral part of the act or transaction that was the subject of the present proceeding. Additionally, we find that the evidence in question is admissible because it was so nearly connected to the charged offense that the State could not accurately present its case without reference to it. The officers stopped the vehicle because it had illegally tinted windows, which in turn led to the discovery of the drugs and other evidence in defendant’s vehicle and on his person. As in
 
 Powell,
 
 the State in the instant case introduced the evidence to indicate the reason defendant was stopped. Therefore, we find that the trial judge did not err by denying the motion for a mistrial based on the testimony regarding the illegally tinted windows.
 

 Testimony Regarding Recognition of Defendant From Prior Incidents
 

 The following testimony was elicited during the direct examination of Sergeant Galliano at trial:
 

 |nQ. Now, at the time that the driver of the vehicle stepped out of the car, what if anything did you and Officer Ward begin to do to further your investigation concerning illegal tint and the traffic stop?
 

 A. Once the driver had stepped out the vehicle, Officer Ward actually observed him and identified him from a previous incident.
 

 Defense counsel said, “Same objection as before, Your Honor.” The trial judge overruled the objection. Apparently, defense counsel was referring to the previous objection he had made regarding the illegally tinted windows.
 

 The following testimony was subsequently elicited during the direct examination of Officer Ward at trial:
 

 Q. Okay. Now then, after the driver got out of the vehicle, what, if anything, did you do to further your investigation concerning the traffic stop tinted windows [sic]?
 

 A. I was familiar with Mr. Massey from prior incidents.
 

 Defense counsel said, “Same objection, Your Honor.” The trial judge sustained the objection.
 

 In
 
 State v. Walker,
 
 03-1072 (La.App. 5 Cir. 12/30/03), 865 So.2d 172, a sergeant testified on direct examination that he reviewed the videotape of a drug transaction and recognized defendant. Defense counsel objected because it implied that defendant had a criminal record. An agent then testified during direct examination that when she and the sergeant viewed the videotape, the sergeant immediately knew who the defendant was. Defense counsel restated his objection and moved for a mistrial that was apparently denied. This Court noted that there was no evidence that the prosecutor was attempting to elicit information about other crimes or bad acts; rather, the questioning was aimed at setting up the sequence of events leading to defendant’s arrest. Secondly, this Court stated that there was no specific mention of a prior crime or bad act by the sergeant or the l^agent. Therefore, this Court found that the trial judge did not err in refusing to grant defendant’s motion for a mistrial.
 
 Id.,
 
 03-1072 at 3-5, 865 So.2d at 174-75.
 

 In this case, we find that a mistrial was not mandatory under LSA-C.Cr.P. art. 770 because the comments were not made
 
 *375
 
 by the judge, the district attorney, or a court official, and because the prosecutor did not deliberately elicit the testimony in question. As in
 
 Walker,
 
 there is no evidence in the instant case that the prosecutor was attempting to elicit information about other crimes or bad acts; rather, the questioning was aimed at setting up the sequence of events leading to defendant’s arrest. The prosecutor asked both witnesses what they did to further the investigation, and Sergeant Galliano and Officer Ward both gave non-responsive answers to that question. Officer Ward responded that he was familiar with defendant from prior incidents, and Sergeant Galliano testified that he observed and identified defendant from a previous incident. Also, as in
 
 Walker,
 
 there was no specific mention of a prior crime or bad act by the sergeant or the officer in the instant case. Lastly, although the trial judge sustained the objection to Officer Ward’s testimony, defense counsel did not request an admonition to the jury to disregard the comment in accordance with LSA-C.Cr.P. art. 771.
 

 In light of the foregoing, we find that the trial judge did not err by denying the motion for a mistrial based on the witnesses’ testimony regarding their familiarity with defendant from prior incidents.
 

 ASSIGNMENTS OF ERROR NUMBER TWO AND THREE
 

 We will address these two assignments of error together because they are related. In assignment of error number two, defendant alleges his right to a fair trial was hopelessly compromised by permitting the jury to consider the wholly unreliable opinion testimony of Sergeant Shane Klein on the ultimate issue of appellant’s guilt. In assignment of error number three, defendant argues the trial 11scourt erred in permitting Sergeant Klein to express an expert opinion on the ultimate issue of guilt.
 

 Defendant argues that the trial judge erred by allowing Sergeant Klein to express his expert opinion on the ultimate issue of guilt, and he further argues that the State’s evidence did not satisfy the four factors set forth in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1998), and that the trial judge failed in his “gatekeeper” role. Defendant admits that his counsel did not object to either the expertise of Sergeant Klein or to the ultimate issue testimony; however, he submits that the errors were so grave as to warrant reversal even absent a contemporaneous objection.
 

 The State responds that defendant failed to preserve this issue for appeal because his counsel did not request a pre-trial
 
 Daubert
 
 hearing, and because his counsel accepted Sergeant Klein as an expert without objection at trial. The State also contends that the instant case does not warrant the application of the exception to the contemporaneous objection rule. Alternatively, the State argues that, even if defendant had preserved this issue for appeal, the claim has no merit. The State asserts that the trial judge did not err in allowing Sergeant Klein to testify as an expert, noting his experience and training, and the fact that this Court has accepted similar testimony in other cases.
 

 With respect to his background, Sergeant Klein testified at trial that he had been employed by the Jefferson Parish Sheriffs Office for ten years, and that he had been in the narcotics division for nine years. He explained that he was a group supervisor at the present time. He further testified that in his capacity as a sheriffs deputy he had made thousands of arrests for drug offenses. Sergeant Klein stated that he was a senior at Loyola University seeking a bachelor’s degree in criminal justice and a minor in forensics.
 
 *376
 
 He asserted that he had attended approximately |u28 narcotics schools, including the DEA as well as the Regional Drug Training Academy. Sergeant Klein explained that those extra classes gave him specific training in the field of narcotics and the narcotics business. He testified that he had been involved in thousands of cases pertaining to possession with intent to distribute narcotics, and that he had worked in an undercover capacity purchasing narcotics on numerous occasions.
 

 Sergeant Klein asserted that he had been qualified as an expert in several divisions of the 24th Judicial District Court in the field of possession with intent to distribute narcotics, possession of narcotics, and the packaging and cost of narcotics. He said he had never been denied qualification as an expert in the 24th Judicial District Court. On cross-examination, Sergeant Klein admitted that he had been qualified five times as an expert in Jefferson Parish, and that he had not been qualified in any other courts. After hearing the testimony, the trial judge qualified Sergeant Klein without objection as an expert in “possession with intent to distribute narcotics and in particular with respect to packaging, quantity, and distribution of narcotics.”
 

 Sergeant Klein subsequently testified that with respect to possession of narcotics, you might find pipes, hypodermic syringes, needles, straws, or “push rods” used to push crack cocaine into a pipe. He explained that a pipe could be used to smoke crack cocaine or powder cocaine, and that you would expect to find a crack pipe with a crack user. Sergeant Klein stated that kitchen Brillo pads were commonly used as filters in crack pipes.
 

 With respect to distribution of narcotics, Sergeant Klein testified that one of the most important things was a scale, and that other things to look for would be money and packaging material. Sergeant Klein explained that distributing narcotics was a business, and that distributors want to make sure the measurements 11sare accurate “to make the most out of what they have.” With respect to money, Sergeant Klein testified that distributors mostly have a lot of 10s and 20s, and that it was rare to have a lot of 100 dollar bills. Sergeant Klein stated that crack cocaine users commonly buy a 20 dollar rock.
 

 Sergeant Klein examined the evidence in this case, including three pieces of crack cocaine found in a bag. He testified that each one was approximately .2 gram per rock, and that a normal size sold on the street would be .1 gram. He further testified that there were other objects in the bag, including numerous bags used to package cocaine. Sergeant Klein noted that those were regular kitchen sandwich bags where the corners were cut off each side and one could put crack cocaine rocks in each corner, twist it up, and tie it for resale purposes. He stated that there were eight bags like that. Sergeant Klein testified that when one purchases cocaine for street level use, “it does not look like that.”
 

 Sergeant Klein also reviewed other evidence in this case, including the scale and the money (two 100 dollar bills, ten 20 dollar bills, two ten dollar bills, four five dollar bills, and the rest in ones). He testified that, “Based on the seized evidence, clearly this is someone who was in possession with intent to distribute.” Sergeant Klein explained that there were no pipes or syringes or any paraphernalia used to consume this “yourself.” He further explained that the only paraphernalia found was that used in the distribution of narcotics, including the packaging material, the digital scale, the amount of cocaine, and the money that was seized.
 

 
 *377
 
 Sergeant Klein testified that the powder cocaine found in this case weighed half an ounce, and it was worth approximately $600.00 or $700.00. He asserted that if one took the amount of cocaine in State’s Exhibit 2, turned it into crack cocaine, and broke it down into 20 dollar rocks, that person would have between $2,500.00 and $3,000.00 worth of crack cocaine. Sergeant Klein testified on crossjexamina-tion16 that based on the paraphernalia associated with this case and the lack of paraphernalia showing someone who was a user, “it’s clearly indicative to me of someone who is in possession with the intent to distribute, not using.”
 

 Also on cross-examination, Sergeant Klein explained, “Although it may look small to most, a half ounce of cocaine is clearly someone who is in the business of distributing cocaine rather than just using.” Sergeant Klein subsequently testified that he saw white specks on the scale as well as loose marijuana, even though he heard the officers testify that they only found marijuana on the scale.
 

 The record shows that defendant did not lodge an objection when the trial judge qualified Sergeant Klein as an expert, nor did he challenge the reliability of the methodology used by the expert. Also, he did not lodge an objection to Sergeant Klein’s testimony, and he did not move for a pre-trial
 
 Daubert
 
 hearing in the trial court. As such, we find that defendant’s failure to make a contemporaneous objection or to request a
 
 Daubert
 
 hearing in the trial court results in a waiver of those issues on appeal. LSA-C.Cr.P. art. 841;
 
 State v. Borden,
 
 07-396, p. 22 (La.App. 5 Cir. 5/27/08), 986 So.2d 158, 172,
 
 writ denied,
 
 08-1528 (La.3/4/09), 3 So.3d 470;
 
 State v. Mosley,
 
 08-1318 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 714,
 
 writ denied,
 
 09-1316 (La.3/5/10), 28 So.3d 1002;
 
 State v. Addison,
 
 05-378, p. 22 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 898,
 
 writ denied,
 
 06-1087 (La.11/9/06), 941 So.2d 36.
 

 Defendant admits that his trial counsel did not object to either the expertise of Sergeant Klein or to his “ultimate issue” testimony. However, he asks this Court to consider this issue nonetheless based on LSA-C.Cr.P. art. 920(2) and the jurisprudential exception to the contemporaneous objection rule. LSA-C.Cr.P. art. 920 provides:
 

 The following matters and no others shall be considered on appeal:
 

 I,7* *****
 

 (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
 

 On very rare occasions, the courts have refused to apply the contemporaneous objection rule as a bar to review an error which was so fundamental that it struck at the very essence of the reliability of the fact-finding process.
 
 State v. Arvie,
 
 505 So.2d 44, 47 (La.1987);
 
 State v. Norman,
 
 99-600, pp. 7-8 (La.App. 5 Cir. 2/16/00), 756 So.2d 525, 529,
 
 writ denied,
 
 00-971 (La.3/23/01), 787 So.2d 1007. In
 
 Arvie,
 
 the court found that the circumstances of the case did not warrant making an exception to the contemporaneous objection rule where the defendant sought appellate review of the prosecutor’s use of his post-arrest silence for impeachment purposes and had not objected to the prosecutor’s questions that elicited the information.
 

 The court acknowledged that there are exceptions to the rule, as in
 
 State v. Williamson,
 
 389 So.2d 1328 (La.1980) and
 
 State v. Green,
 
 493 So.2d 588 (La.1986).
 

 In
 
 Williamson, supra,
 
 the court addressed the issue despite the lack of objection, when the jury was improperly charged with the wrong definition of the charged crime. The Supreme Court rea
 
 *378
 
 soned that, “a substantial error in the very definition of the charged crime was of such importance and significance as to violate the fundamental requirements of due process.”
 
 Arvie,
 
 505 So.2d at 47. In
 
 Green, supra,
 
 the court refused to apply the contemporaneous objection rule because there was an omission in a fundamental jury instruction. In
 
 Norman,
 
 this Court recognized another exception. In that case, defendant alleged that the trial judge made improper comments on the evidence in front of the jury.
 
 Norman,
 
 99-600 at 8, 756 So.2d at 529. Although this Court recognized that a judge’s improper | iscomments can be an exception to the contemporaneous rule, this Court further found that the judge’s comments in that case were not comments on the evidence, and did not contribute to the guilty verdict.
 

 In
 
 State v. Rochon,
 
 98-717 (La.App. 5 Cir. 3/10/99), 733 So.2d 624, defendant alleged that the trial court erred by allowing highly prejudicial testimony from Sergeant Bruce Harrison, among other things; however, defendant did not object to it at trial. On appeal, defendant admitted as much, but urged this Court to review the issues nonetheless, arguing that appellate review was appropriate in these instances absent contemporaneous objections. This Court found that with regard to the alleged highly prejudicial testimony from Sergeant Harrison and the alleged highly prejudicial comments and improper questions by the prosecutor in his cross-examination of defendant, the relevancy or the prejudice of witness testimony was not one of the limited exceptions to the contemporaneous objection rule. This Court found that the errors, if any, could easily have been addressed and corrected by the trial court with an objection. Thus, this Court declined to extend the limited exceptions to the contemporaneous objection rule to include alleged prejudicial errors in witness testimony. Accordingly, this Court concluded that pursuant to LSA-C.Cr.P. art. 841 A, absent a contemporaneous objection, the issues were not properly before this Court.
 
 Id.,
 
 98-717 at 3-6, 733 So.2d at 627-28;
 
 State v. Hayes,
 
 364 So.2d 923 (La.1978);
 
 State v. Colligan,
 
 95-880 (La. App. 3 Cir. 8/7/96), 679 So.2d 184.
 

 In this case, we find the facts do not warrant an exception to the contemporaneous objection rule. The error, if any, in Sergeant Klein’s expert testimony was not an error which was so fundamental that it strikes at the very essence of the reliability of the fact-finding process.
 
 Ar-vie, supra.
 
 Additionally, this error is not one of the limited exceptions described in the cases discussed 113above. Further, this Court has declined to extend the limited exceptions to the contemporaneous objection rule to include prejudicial errors in witness testimony.
 
 Rochon, supra.
 

 Since the defendant in the instant case failed to object to Sergeant Klein’s testimony or to move for a pre-trial
 
 DaubeH
 
 hearing, and this is not the type of error which justifies the use of the exception to the contemporaneous objection rule, we decline to address this issue on appeal.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). The following errors patent are presented for review.
 

 Enhanced Sentence
 

 The transcript and the commitment indicate that when the trial judge imposed the enhanced sentence, she did not order it to be served without benefit of probation or suspension of sentence as mandated by LSA-R.S. 15:529.1 G.12. Additionally, the transcript and the com
 
 *379
 
 mitment indicate that the trial judge did not order the first two years of the enhanced sentence to be served without benefit of parole, probation, or suspension of sentence as required by the underlying statute, LSA-R.S. 40:967 B((4)(b)). The restrictions on parole eligibility imposed on habitual offender sentences under LSA-R.S. 15:529.1 “are those called for in the reference statute.”
 
 State v. Esteen,
 
 01-879, p. 30 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 79 n. 24,
 
 writ denied,
 
 02-1540 (La.12/13/02), 831 So.2d 983. Although the trial judge failed to prohibit benefits in imposing the enhanced sentence, no corrective action is required because the “without benefits” provision is self-activating. LSA-R.S. 15:301.1(A);
 
 State v. Williams,
 
 2000-1725, p. 10 (La.11/28/01),20 800 So.2d 790, 799;
 
 Esteen,
 
 01-879 at 29, 821 So.2d at 78. Therefore, no further action is necessary by this Court.
 

 Post-Conviction Relief Advisal
 

 The commitments pertaining to the original and enhanced sentencing reflect that defendant was properly advised of the prescriptive period for filing for post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8. However, the transcript reflects that defendant received incomplete advisals prior to the imposition of his original and enhanced sentences, when the trial judge stated defendant had “two years to seek post-conviction relief.” This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his
 
 conviction and sentence
 
 become final is incomplete.
 
 State v. Grant,
 
 04-341, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598 (emphasis as found in original). Generally, the transcript prevails where there is an inconsistency between the minute entry and the transcript.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 Therefore, we advise defendant by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. arts. 914 or 922. See
 
 State v. Neely,
 
 08-707, p. 9 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538,
 
 writ denied,
 
 09-0248 (La.10/30/09), 21 So.3d 272.
 

 Accordingly, defendant’s conviction and sentence are affirmed.
 

 AFFIRMED